# Lee *v.* The State, *ex rel.* Locke.

*Quo Warranto to test Right to Office of County Solicitor.*

49   43
e144  635
144  639,

1. *Plea to jurisdiction of court over defendant's person.* — When a proceeding in the nature of a *quo warranto* is sued out against a person who holds the office of county solicitor, for the purpose of testing the right to that office between him and the relator; and he appears in court on the filing of the relation, and claims to exercise the duties of said office, he cannot be heard to plead that the court has

[Lee *v.* State.]

no jurisdiction over his person, because he resides outside of the limits of its local jurisdiction.

2. *Jurisdiction of City Court of Eufaula.* — Under the act creating the City Court of Eufaula (Session Acts, 1869-70, pp. 104-5), that court has jurisdiction of a proceeding in the nature of a *quo warranto*, sued out on the relation of a private person, to test the defendant's right to the office of solicitor of Barbour County.

3. *Quo warranto; security for costs.* — When a *quo warranto* is sued out on the relation of a person claiming a county office, against one who is exercising the duties thereof (Revised Code, §§ 3082-3), it should not be dismissed, on motion, because security for the costs has not been given; though it might be proper, according to the common law practice in similar cases, to stay proceedings, on motion, until such security is given.

4. *Same; averment in relation of usurpation of office.* — An averment in the relation, in such case, that the defendant, "for the space of one week or more last past, has used, and does still use, the liberties and franchises of said office, in violation of the existing laws of the State," is a sufficient averment that he has *usurped* said office.

5. *Same; when proper remedy.* — A proceeding by *quo warranto* is the only proper remedy, under the laws of this State, to test the right to an office which is claimed by one person, and unlawfully held by another; especially, as in this case, where both parties claim under certificates of election issued by the secretary of State at different times.

6. *Contest of election before probate judge.* — When an election is contested before a probate judge, under the Election Law of 1868 (Sess. Acts 1868, p. 281, § 65), he acts merely as a supervisor, and does not exercise judicial power; and if such a proceeding could be applied to test a person's right to an office, of which he is already in possession, the law would be unconstitutional, because it makes no provision for a trial by jury.

7. *Quo warranto; trial by jury.* In a proceeding by *quo warranto*, all the facts being admitted by the parties, and there being no conflict or dispute about them, there is no error in refusing a trial by jury, since it only remains for the court to pronounce the law on the admitted facts.

8. *Certificate of election by the secretary of State, founded on incomplete returns.* — A certificate issued by the secretary of State, to the board of supervisors, stating that "by the returns on file in" his office, A. B. was elected solicitor of a specified county; when, in fact, the certificate of the returning officers stated that, by reason of an injunction which had been served upon them, restraining them from opening and counting the votes cast at one particular precinct in the county, they were unable to certify the result of the election, is a mere nullity, and confers on said A. B. no right to the designated office.

9. *Injunction restraining supervisors of election from opening and counting votes and making return.* — An injunction restraining the supervisors of a county election from opening and counting the votes cast at a particular precinct, and from making return thereof to the secretary of State, is a sufficient legal excuse for a failure on their part to make their official return within the time prescribed by law; and they may, in such case, make a complete or supplemental return after the dissolution of the injunction.

10. *Conclusiveness of judgment.* — A judgment of the Circuit Court, overruling and refusing a motion "to be recognized and permitted to act as solicitor of said county," made by a person who claims the office, and resisted by another who is exercising its duties, is no bar to a subsequent proceeding in the nature of a *quo warranto*, sued out in the name of the State, by the plaintiff in the motion as relator, and against the person so in possession.

11. *Validity of election, as affected by irregularities of inspectors or managers.* — Where it does not appear that any legal votes were rejected, or any illegal votes received, and there is no allegation or evidence of fraud or misconduct calculated to prevent a fair, free, and full exercise of the elective franchise, an election ought not to be held invalid, on account of mere irregularities on the part of the inspectors, or persons acting in that capacity.

12. *Inspector of election; officer de facto.* — Where an inspector, regularly appointed, is not present at the opening of the polls, and his place is thereupon filled by the inspector who is present; and, on his appearing afterwards, and claiming the office, the person appointed in his stead retires, and he thenceforward acts as inspector until the close of the election, he must be regarded as an inspector *de facto*, and his acts held valid as to all third persons and the public.

[Lee v. State.]

Appeal from the City Court of Eufaula.

Tried before the Hon. E. M. Keils.

The facts of this case, as stated very fully in the opinion of the court, are as follows : —

" This proceeding was commenced in the City Court of Eufaula, by Richard D. Locke, in the name of the State of Alabama, on his relation, under chapter five of the Revised Code, page 599, ' To vacate charters of corporations, and to prevent usurpation of offices.' The relation states, and gives the said court to be informed, that the said relator was duly elected to the office of solicitor of Barbour County, at the election held in the State of Alabama on the 5th day of November, A. D. 1872 ; had received a certificate of his election from the secretary of State, had been commissioned by the governor, and was entitled to use, exercise, and enjoy all the rights, privileges, and emoluments of said office; and that Alto V. Lee, of said county, who was made defendant in said proceeding, ' had, for the space of one week or more then last past, used, and did still use, the liberties and franchises of said office of solicitor for said county, in violation of the existing laws of said State of Alabama.' And said relator, on the part and in behalf of said State, prayed the consideration of the court in the premises, and that process might be issued in that behalf against the said Alto V. Lee, requiring him to appear and answer the said State, and to show by what warrant and authority he claimed to exercise, use, and enjoy the liberties, privileges, and franchises of said office.

" Said relation was filed in open court, on the 9th day of December, 1872 ; and the said relator attached to his relation, as parts thereof, copies of the certificate of the board of supervisors of said county to the secretary of State, setting forth the number of votes cast in said county at said election for each person voted for as solicitor for said county, and showing that the said relator was elected solicitor for said county by a majority of three hundred and ninety-eight votes; and the certificate of the secretary of State, of said relator's election to said office, and the commission of the governor, &c. On the filing of said relation, said Alto V. Lee, ' being present in court, by himself and counsel, not waiving any right to plead to the jurisdiction of said court or otherwise, consented to the filing of said relation, and waiving process; leave being given, of one day, to said defendant, to plead, answer, or otherwise defend against said relation.'

" On the next day, said defendant filed two pleas to the jurisdiction of the court: the first, that he was not subject to the jurisdiction of said court, because he resided in the town of Clayton, west of range twenty-seven in said county, and there-

fore the said court ought not to take jurisdiction, nor to entertain the said suit or proceeding against him ; and the second, that said court had not and ought not to take jurisdiction of said case, for that the subject matter of said proceeding could only be inquired into by the Circuit Court of said county. The relator demurred to these pleas, and the court sustained his demurrer.

" The defendant then moved the court to dismiss the proceeding, because security for the costs was not given ; and he reserved an exception to the overruling of his motion. On the overruling of said motion, the defendant demurred to the relation, and assigned seven causes of demurrer to the same. · The first cause of demurrer states, that the relation fails to show that the defendant had *usurped* the said office of county solicitor. The second cause of demurrer was, because the relation failed to show that said relator had no other remedy in respect to the matters complained of. The remaining assignments only state the same cause in different forms. The court overruled the demurrer ; after which the defendant filed several pleas in bar ; and, without any replication or issues of facts being made, the parties proceeded to a trial on the merits, on confessions and admissions made by both. The language of the record on this subject is as follows: ' After which ' — that is, after said demurrer was overruled — ' the defendant pleaded his plea and answer to the merits of the case, and in bar of the action, and claimed a jury ; which the State resisted, as there was no issue of fact, or disputed fact, offered by either party, which the defendant also admitted ; and for this reason the defendant was not allowed a jury ; and the court, upon consideration, it being admitted by all the parties that there was no issue of fact, held that the defendant was not entitled to a jury, and denied him the same for the reason stated, and proceeded to try said cause against the objection of the defendant, to which ruling of the court the defendant excepted.'

" The case made by the confession and admissions of the parties, as it appears in the record, may be stated as follows : At the general election held on the 5th day of November, 1872, the said relator and said defendant were the only candidates for the said office of solicitor of Barbour County. After the inspectors at the several boxes and election precincts had counted out the votes polled at the several voting places, and had certified the poll-lists and sealed up the boxes containing the ballots and poll-lists, and delivered them to the respective returning officers, who had delivered them to the judge of probate of said county ; and before the board of supervisors had opened said boxes, and compared and counted the ballots cast at said election, the defendant and others, who had been can-

[Lee *v.* State.]

didates at said election (to wit, James W. Mabry, who had been a candidate for senator; Jere N. Williams, S. H. Dent, and M. Cody, who had been candidates for representatives, &c.), on the eleventh day of said month obtained from the Chancery Court an injunction, directed to the several members of said board of supervisors, enjoining and restraining them from opening, comparing, and counting the votes or ballots cast at box number one in the city of Eufaula, so far as the election for solicitor for said county and representatives to the General Assembly was concerned; and they were also enjoined and restrained from giving to any person any certificate of election, predicated upon the votes or returns in said box number one, for senator and representatives, or to any person for solicitor for said county, until the further order of said court.

" After the service of said injunction on said board of supervisors, on the next day, to wit, the 12th day of said month, said board of supervisors returned and certified to the secretary of State, J. J. Parker, a correct return of the votes given at said election for the persons voted for in said county for senator, representatives, and solicitor, at all the precincts and boxes, except said box number one and precinct number four; the votes cast at said precinct number four, as stated by them, being rejected on account of fraud. And as to the persons voted for, for senator and representatives, said supervisors certified to said secretary of State that they were unable to report and certify the result of said election in said county by reason of said injunction, a copy of which was made a part of their return. By said return it appeared that said defendant had received, at the precincts and boxes in the county, except said box number one, two thousand one hundred and sixty-one votes, and that said relator had received one thousand nine hundred and eighty-five votes. On the 14th day of said month, the said injunction having been dissolved in the mean time, the said supervisors made a supplemental return to said Secretary of State of the votes cast at said box number one in the city of Eufaula, by which it appeared that, at said box, the relator had received seven hundred and fifty-three votes, and said defendant had received one hundred and seventy-nine votes; thus showing that said relator was elected solicitor of said county by a majority of three hundred and ninety-five votes.

" On the 13th day of said month, the day before said supplemental return was made, said J. J. Parker, then Secretary of State, made and forwarded to said board of supervisors of Barbour County a certificate, dated 'Montgomery, November 13, 1871,' and addressed to said board of supervisors, as follows: 'I hereby certify, that at a general election held on Tuesday, the 5th day of November instant, for county solici-

tor, it appears by the returns on file in the office that Alto V.
Lee was legally elected solicitor for the County of Barbour.'
This certificate, which was signed by said Parker as secretary
of State, was delivered by said board of supervisors to said
defendant ; and, on the 15th day of the same month, he took
and subscribed the oath of office, filed the same in the office of
the probate judge of said county, and entered upon the dis-
charge of the duties of said office of solicitor of said county ;
and from that day he claimed the right to said office, and ex-
ercised the duties thereof, and continued to do so until said
relation was filed, against the claim and right of said relator.
Afterwards, and after said supplemental return had been made
as aforesaid, said J. J. Parker having ceased to be secretary of
State, and being succeeded in said office by Pat. Ragland, who
had been elected secretary of State in his place and stead, and
had qualified and entered on the duties of said office, to wit,
on the — day of said month of November, said Ragland made
and forwarded to said board of supervisors a certificate, certi-
fying therein that said relator was duly and legally elected
solicitor of said County of Barbour ; and thereupon said rela-
tor was commissioned by the governor as the solicitor of said
county.

" It was admitted by both the relator and the defendant
that, by excluding and not counting the votes cast at said box
number one, said defendant was elected the solicitor of said
county ; and that by counting the votes at said box said rela-
tor was elected solicitor of said county, and not defendant.
As to the manner, and by whom the election was conducted at
said box number one, the following, as it appears stated in one
of the defendant's pleas, was admitted and confessed to be
true, to wit :

" ' And this defendant, for further answer to said complaint
and information, says, that at and for box number one in the
city of Eufaula in said county, at said election for said office of
county solicitor, the judge of probate, sheriff, and clerk of the
Circuit Court of said county appointed the following named
persons, and none others, as the inspectors of said election at
said box, viz., James M. Buford, C. P. Wheeler, and Willis
Jackson, who were duly notified of said appointment, as re-
quired by the laws of said State. And this defendant further
avers, on information and belief, that at seven o'clock A. M., on
the said 5th day of November, A. D. 1872, the day appointed
by law for holding said election, the said James M. Buford
alone, of the number appointed as aforesaid, was present as an
inspector, neither of the other two, viz., C. P. Wheeler and
Willis Jackson, being present at said box ; whereupon the said
Buford, as authorized by law, completed the number of in-

[Lee *v.* State.]

spectors, by appointing Columbus McRea and Thomas J. Everett, two citizens and legal voters in said county, and then present; and these three, being sworn to hold said election according to law, the polls were then opened according to law, and votes were received according to law. Your defendant further answers, on information and belief, that after the voting had proceeded for some time, and a considerable number of votes had been received, the said C. P. Wheeler, who was absent when the polls were opened, and when the list of inspectors had been completed as aforesaid, came to the said box, and claimed the right to act as an inspector, and was permitted to act as such, and that said Everett retired, and said Wheeler thereupon acted as one of the inspectors of said box. Afterwards, the said Columbus McRae retired, and Charles C. Robinson was permitted to act as one of the inspectors of said box. And this defendant further avers, that the said Columbus McRae and Thomas J. Everett, after they respectively retired from said box, never did any other act as inspectors of said election, or in counting the votes, or in making the certificate required by law; but that thenceforward the said C. P. Wheeler and Charles C. Robinson acted as said inspectors, and aided in counting the votes, making the certificate required by law, and sealing up said box, and sending it to Clayton, to the county supervisors, as required by law. And this defendant charges, that the voting done, and the election held at said box, as aforesaid, was illegal,' &c.

" There was no evidence, nor was it alleged on the part of the defendant, that there was in fact any fraud or mal-conduct on the part of those who actually conducted said election; or that any illegal or fraudulent votes were cast or counted; or that said election was not fairly, honestly, and legally conducted, except as to the irregularities above stated.

" It was admitted, also, that at the Fall Term, 1872, of the Circuit Court of said county, as stated in another one of the defendant's pleas, said relator made the following motion in said court, to wit: —

" ' Alabama, Barbour County. { *Ex parte R. D. Locke.* Circuit Court, Fall Term, 1872. { Application to be recognized and permitted to act as solicitor of Barbour County, upon the exhibition to the court of the applicant's commission as such from the governor, and proof that he has taken the oath of office;' which was signed, ' John A. Foster, for motion.' It was admitted, also, that notice of said motion was given to said defendant, and that the parties appeared; and the minute-entry of said Circuit Court states that ' said parties appeared, and the court proceeded to receive and consider the evidence offered by both sides, and to hear the argument of

[Lee *v.* State.]

counsel *pro* and *con.*; and, upon consideration thereof, decides that said motion be denied.'

" The foregoing is as accurate a statement of the facts of the case as we have been enabled to make without copying the whole, which would render the opinion unprofitably long, and would not make the view we take of the case any more intelligible."

All the rulings of the court adverse to the defendant, as above stated, are assigned as error.

SEALS & WOOD, JOHN COCHRAN, and RICE, JONES & WILEY, for the appellant.

JAS. L. PUGH & JNO. A. FOSTER, *contra.*

PECK, C. J. — The City Court of Eufaula has jurisdiction, in civil cases, where the defendant resides in said County of Barbour east of range twenty-seven; and concurrent jurisdiction with the Circuit Court of said county of all offences against the criminal laws of the State committed in said county. See sixth section of the act approved February 14, 1870, entitled, " An act to establish the City Court of Eufaula." Session Acts of 1869–70, page 105. It may be admitted that a proceeding in the nature of a *quo warranto*, especially when, as here, it is instituted on the relation of an individual, and its object is to determine whether the relator or the defendant is entitled to the office which it is alleged that the defendant usurps, &c., is to be regarded rather as a civil than as a criminal proceeding. If, however, the defendant appears in the court, and claims to be an officer of the court, and to exercise the duties of said office in the court, and to enjoy the privileges, and to take and receive the fees and emoluments of said office; if the court has jurisdiction of such proceedings, and on a proper relation being filed in the premises, charging him with usurping said office, and with a violation of the law in exercising the duties thereof; may not said court, by its process, require him to answer to said proceeding, and to show by what warrant and authority he claims to hold said office, and to exercise the duties thereof in said court? and can such defendant successfully plead to the jurisdiction of the court that he resides in said county, but not within that portion of it over which the civil jurisdiction of said court extends? These questions present a novel case, and one, perhaps, not free from doubt; but looking at it on principle, and the reason of the thing, we are of the opinion he cannot. Every court of general jurisdiction (and such is the City Court of Eufaula), within certain limits, must necessarily

have jurisdiction over its own officers; and this we see, by the sixth section of the act establishing it, is expressly conferred on said City Court. Besides, by appearing in said court, and claiming to exercise an office pertaining to said court, and necessary to the business of said court, he must be held to be subject to its jurisdiction, and bound to answer to its process, in such a case as this; and he may be required to answer and show by what warrant and authority he claims to hold said office, and to exercise and perform its duties, and to take its emoluments.

2. As to the plea that the court had no jurisdiction of the subject matter of said proceeding, we have no doubt. It is clearly insufficient. True, section 3084 of the Revised Code, which is part of chapter 5 (page 599), says that such proceedings must be brought in the Circuit Court of the county in which the act or acts are done and suffered. But it must be remembered that the act establishing said City Court was passed after the adoption of said Revised Code, and expressly confers on said City Court the same jurisdiction, within certain limits in said county, as are exercised by the Circuit Court of the county. Section seven of said act gives to the judge of said court, within the limits of said court's jurisdiction, the power to issue writs of injunction, *habeas corpus*, or any other writ or process, in any and every case in which, by existing laws, circuit judges might order the issue of the like remedial writs or process, &c. The said City Court, therefore, committed no error in sustaining the demurrer to said pleas.

3. The motion to dismiss the proceeding out of said court, because security for the costs was not given, was properly overruled. Section 2083 of the Revised Code says that such action may be brought on the information of any person giving security for the costs, &c.; but it does not say that the action shall be dismissed if security for costs be not given. Section 2802 of the Revised Code, which requires security for the costs to be given by non-resident plaintiffs, expressly provides that, unless security for the costs be indorsed on the complaint, the suit shall be dismissed by the court on motion. Section 3083 contains no such provision. A motion to stay proceedings until security for costs was given would probably have been sustained. Such is the common law practice in similar cases.

4. As to the first specified cause of demurrer: The relation states that the relator had been duly elected solicitor of said county, at the general election in this State held on the 5th day of November, 1872; that he had received a certificate of his election from the secretary of State, and a commission from the governor; that said defendant, Alto V. Lee, " for the space of one week or more last past, had used, and still did

use, the liberties and franchises of said office of solicitor for said County of Barbour, in violation of the existing laws of said State." One who uses the liberties, privileges, and franchises of a public office without right, and in violation of the laws of the State, is a usurper.

5, 6. The second cause of demurrer was, that the relation failed to show that the relator had no other remedy in respect to the matters complained of. The matters stated in said relation, if true, present a case in which a proceeding under said chapter five, in the nature of a *quo warranto*, is the proper remedy. Where an office is claimed by one person, who alleges that another is unlawfully in possession of the same, and is exercising the duties and enjoying the privileges and emoluments thereof, in violation of law, the only remedy to try the right and to remove the alleged usurper, and also to recover the office, is, in this State, a proceeding under said chapter five. The election laws, which provide the mode and manner of contesting an election, afford no remedy against one who is already in the possession of an office. If, as in this case, the office is filled by the vote of a single county, the contest is made before the probate judge of the county; and his judgment either confirms or annuls the election altogether, or declares some other person than the one whose election is contested to be duly elected; in which latter case, if the person so declared elected is entitled to a commission, the judgment must be certified to the secretary of State, who must commission such person. In such cases, the judge of probate acts in the character of a supervisor of elections, and his powers are not judicial. If the said election laws apply to cases like the present, they are unconstitutional, as providing a tribunal to determine between the conflicting claims of individuals to the same office, where one is already in possession, without providing any mode by which the right can be determined by trial by jury. *Wammack* v. *Holloway*, 2 Ala. 31; *State, ex rel. Thompson* v. *Circuit Judge of Mobile*, 9 Ala. 338; *The State, ex rel. Spence* v. *Judge of Ninth Judicial Circuit*, 13 Ala. 805. Besides, the relator was returned by the supervisors to the secretary of State as elected, to whom the secretary gave a certificate of election, upon which the governor issued a commission. There was, therefore, no person with whom he could contest said election before the probate judge. A contest is made, not by the successful, but by the unsuccessful candidate, or by some other proper person.

This disposes of all the remaining causes of demurrer, which only state the same cause in different forms.

7. There was no error, under the facts disclosed by the record, in the refusal of a trial by jury to the defendant. If

[Lee *v.* State.]

there was no issue of fact, and no disputed fact between the parties, — in other words, if all the facts as to the merits were confessed and admitted, — there was nothing for a jury to do. The facts all being confessed and admitted, it only remained for the court to pronounce the judgment of the law on those facts.

8, 9. We now proceed to consider and dispose of the case on the facts admitted and confessed by the parties, as it seems to us the law and right and justice demand. We have already decided that the relation presented a proper case for a proceeding in the nature of a *quo warranto ;* and that the rights of the State, and of the relator and the defendant, could not be decided by a contest before the probate judge of said county. We further hold that the certificate of election issued by said Parker, as secretary of State, was a mere nullity. It was issued before any return and certificate had been made by the inspectors of election for said county, stating the number of votes cast at each box and precinct in the county for said office of solicitor; but they expressly stated and certified that they could not do so. Said certificate, therefore, conferred on said defendant no lawful authority or warrant to take upon himself the office of solicitor of said county, or in any manner to exercise the duties thereof. We also hold that said injunction was a legal excuse on the part of said supervisors for not making their certificate to the secretary of State that any person was elected solicitor for said county within the time required by said election laws ; and that it was legal to make said supplemental return and certificate after the dissolution of said injunction. At any rate, the defendant cannot be heard to make an objection on that account, as we are bound to presume that said injunction was illegally and improperly obtained by him, from the fact that it was dissolved within three days after it was granted. To permit him to do so, would be to permit him to take advantage of his own wrong.

10. Was the said motion in the Circuit Court, and the judgment of said court on the same, as evidence conclusive, or as a plea at bar, to the present proceeding? Clearly it was not. It was not between the same parties ; the issue was not the same ; and the right of said relator and said defendant to said office in fact was not, and could not be, decided in that way. The court only decided, and could only decide, whether the said motion ought to be granted or refused ; that is, whether the relator, on the production of his commission, ought to be permitted to act as solicitor of Barbour County in said Circuit Court. Whether said court decided right or wrong in denying said motion need not now, and ought not to be decided. The State was not interested, and was not a party

to said motion, and could not be prejudiced by it.   The State is a party to the present proceeding, and has a deep interest in knowing whether any person is exercising the duties of a public office, which concerns the administration of the public justice of the country, without legal warrant or authority, and in violation of the laws of the State.   Consequently, the rights of the State were not, and they could not be, prejudiced by said motion in the Circuit Court, which was made alone in the name of the relator ; and the judgment of said court on said motion was no bar to this proceeding, which is in the name of the State, and in which the State as well as the relator is interested.   On this subject, see 1 Greenl. Ev. §§ 522, 523, notes, and cases cited.

11. Did the irregularities in the conduct of the election at box number one in the city of Eufaula, as stated in the record, render the election at said box invalid, in the absence of any fraud, or intended fraud, on the part of the persons who actually performed the duties of inspectors of election in conducting it, it not appearing that there was any misconduct on their part calculated to prevent a free, fair, and full exercise of the elective franchise?   We think this question ought to be answered in the negative.   Statutes directing the mode of proceeding by public officers are directory, and a strict compliance with their provisions is not essential to the validity of their proceedings, unless it is so declared by the statute.   *The People* v. *James M. Cook*, 14 Barbour's S. C. R. 259 ; and the same case, on error, 4 Selden, 67.   In many of its aspects, that case was like the present.   It was a proceeding in the nature of a *quo warranto*, to determine whether the relator, Benjamin West, Jr., or the defendant, was the lawfully elected treasurer of the State of New York.   The complaint, or information, alleged that the defendant, said James M. Cook, without any legal warrant or authority or right whatsoever, had, for the space of five            or more, last past, and since the first day of January, 1852, held, used, and exercised the duties of said office of treasurer of said State of New York, and still did hold, use, and exercise the duties of the same, and, without any legal warrant or authority, had claimed, used, received, and enjoyed all the rights, franchises, fees, and emoluments belonging and appertaining to said office ; that said Benjamin West, the relator, was rightfully entitled to said office, and to all the rights, franchises, and emoluments thereof ; and further alleged, that at a general election held throughout said State of New York, on Tuesday, the 4th day of November, 1851, according to the Constitution and laws of said State, for the election of a state treasurer, with several other officers, he, the said relator, was duly elected treasurer by the greatest

[Lee *v.* State.]

number of votes given at said election. By the rejection of the votes polled at certain places of holding said election, for alleged irregularities, &c., the defendant had been declared elected by the board of canvassers; and he claimed to hold said office, and to use and exercise the duties thereof, by warrant and authority thereof, &c., as lawfully he might; and he denied that he held the said office unlawfully, without warrant and authority of law, &c. Many questions of alleged irregularities on the part of those persons who conducted the said election in those places, were considered and decided. In deciding said questions, the court declared that statutes directing the mode of proceeding by public officers are directory, and are not to be regarded as essential to the validity of the proceedings themselves, unless it be so declared in the statute; and the court say that this rule should have a liberal application in respect to the duties of inspectors of elections, when we consider the character of the duties and of the men who are necessarily selected to fill these offices. This certainly may be applied most appropriately to our own State, as we so well know that, with us, these officers are oftentimes ignorant and inexperienced, and poorly qualified to discharge the duties of any public office.

In that case it was held, also, that the fact that the inspectors of an election proceeded with the election for a short time with only one clerk, could not, in the absence of any evidence of fraud, render the election void; nor the fact that a person who was not a member of the board nor a clerk, sat at the table, and kept a list of the voters, and copied some from the poll-list; nor the fact that, while two of the inspectors were gone to breakfast, the remaining inspector appointed another person inspector, and administered to him the official oath, the two then proceeding to act as inspectors in the absence of the others; nor the fact that a person thus appointed assisted, while the other two were eating their dinner, in the same room where the polls were held; nor the fact that he assisted for a short time, by the request of the others, while all three were present. It was held, also, that the fact that there were four inspectors acting at the polls, and that the returns were signed by four, although an irregularity, would not affect the validity of the election.

The principle settled in that case is, that if it does not appear that any illegal votes were received, or any legal votes rejected at the election, and there is no evidence of fraud in conducting the polls, or canvassing the votes, such and like irregularities will not render the election void. That case, it seems to us, presents the view that ought to be taken in disposing of the present case and all cases of this sort. It estab-

lishes the principle, and we think correctly, that an election ought not to be held invalid on account of irregularities, where no illegal votes are alleged to have been received, and no legal votes to have been rejected, and where no misconduct is shown, calculated to prevent a fair, free, and full exercise of the elective franchise. We are not prepared to hold that the election at said box number one ought to be declared invalid on account of the irregularities at said box; no fraud being shown, and the election appearing to have been in fact fairly conducted on the part of the persons who actually managed and conducted it. It is fair to presume, we think, as nothing to the contrary is shown, that the said election was properly conducted in all its essentials, and that the will and choice of the lawfully qualified voters were fairly and freely expressed, without let or hindrance. To declare said election invalid on account of the ignorant, but no doubt honest mistakes and irregularities of the inspectors, or of those who acted as such, would be to visit their mistakes upon those who were not in any wise the cause of or responsible for them, and would also be in violation of sound public policy.

We have been overwhelmed by the multitude of books referred to by the counsel for the defendant, in their arguments and briefs. Most of them have been examined; many of them are altogether inapplicable; and some of them seriously militate against the view which we feel constrained by a high sense of duty to take of this case. To adopt technical and stringent rules in the construction of our election laws will be, in most cases, to defeat the very objects and purposes of said laws, and to disregard the honestly and fairly expressed will and desire of the people, which it is manifestly the purpose and intention of said laws to secure and carry into effect. This should not be done. A more liberal and just rule of interpretation will be more in harmony with the manifest policy and purpose of said laws, and, as we believe, will promote the public good, and the general welfare of the people of the State. It is admitted by the defendant that, if the votes cast at said box number one be counted, then the relator was elected to the office of solicitor of said County of Barbour, and that he was not. For aught that appears in the record, and in the facts agreed on by the parties, we are persuaded and satisfied that those votes were legally counted.

12. There is another reason, satisfactory to us, why the votes cast at said box should not be rejected. One of the two inspectors who had been appointed, and who was not present when the poll at said box was opened, and whose place was filled by the inspector who was present, came soon afterwards, and claimed that he was one of the inspectors originally ap-

pointed, and that by virtue of said appointment, notwithstanding his place had been filled as aforesaid, he had a right and was entitled to participate as an inspector in said election, and in conducting the same. Now, it may be conceded, perhaps, that his legal title as inspector was destroyed by said appointment of another person in his stead; but it did not destroy his color of title. That still remained. He had the evidence of his appointment, his commission, the notice of his appointment which had been served on him; and this gave him claim, or color of title. And as his claim was yielded to by the persons then conducting said election, and was also acquiesced in by the assembled voters there convened to cast their votes; and as, for aught that appears, his said claim was made honestly and in good faith; and as he was permitted to take his place as an inspector on his said claim, and the one who had been appointed in his stead thereupon retired; and further, as he acted from that time forth as an inspector in conducting said election,—he must be regarded as an inspector *de facto*, and his acts be held valid as to all third persons and the public. *The People v. Cook, supra,* and cases cited.

The filling of the place of the inspector who retired during the day, before the election was over, can hardly be regarded as an irregularity. We will presume, as the contrary does not appear, that he retired for a good reason; but whether he did so or not, it was the duty of the two remaining inspectors to fill his place. If this could not be done, it would be in the power of an unscrupulous inspector to defeat an election whenever he might please to do so.

It follows from what we have said, that the judgment of the court below is correct, free from any hurtful error, and ought to be, and is hereby, affirmed. The appellant will pay the costs.