WILSON, PETITIONER, *v.* DISTRICT COURT OF SAN JUAN, RESPONDENT.

PETITION for a Writ of Certiorari to the District Court of San Juan in *Quo Warranto* Proceedings.

No. 348.—Decided May 22, 1922.

QUO WARRANTO.—A *quo warranto* proceeding instituted against a public officer attacking the validity of his appointment is not one of the actions which the Legislature had in mind in enacting subdivision 2 of section 79 of the Code of Civil Procedure.

The facts are stated in the opinion.
*Messrs. J. A. Loret, R. H. Todd, Jr.,* and *J. Tous Soto* for the petitioner.
*Messrs. R. Rivera Zayas, M. Guerra* and *F. Soto Gras* for the respondent.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a petition for a writ of certiorari for the pur-

pose of having this Supreme Court review and set aside an order of the Second District Court of San Juan refusing to transfer a *quo warranto* proceeding instituted in the said court by The People of Porto Rico, at the relation of Antonio R. Barceló, Cayetano Coll y Cuchí and Guillermo Esteves, against the petitioner who holds the office of Commissioner of the Interior.

The writ of certiorari was issued and from the original record of the *quo warranto* proceedings sent up to this court it appears that the respondent below and petitioner here moved for the transfer of the case to the First District Court of San Juan "because the unlawful acts alleged as a ground for this action to have been committed by the respondent, that is, the discharge of the duties of his office, where committed and are being committed in San Juan where the respondent has his office, the cause of action having originated in San Juan which forms a part of the First District Court of San Juan."

We have just decided in certiorari proceedings Nos. 349 and 350 that the general rules contained in the Code of Civil Procedure in regard to the place of trial are applicable to the two district courts for the judicial district of San Juan created by Act No. 41 of 1921. Therefore, we must consider and decide the question raised in accordance with the said rules.

The respondent in the *quo warranto* proceedings resides in Bayamón, which is one of the municipalities assigned to the Second District Court of San Juan, but in moving for the transfer of the case to the First District Court he invokes subdivision 2 of Section 79 of the Code of Civil Procedure, which reads as follows:

"Sec. 79.—Actions for the following causes must be tried in the district where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial:
"1. * * *

"2. Against a public officer, or person specially appointed to execute his duties, for any act done by him in virtue of his office, or against a person who, by his command or in his aid, does anything touching the duties of such officer."

A careful consideration of the law as worded and of the jurisprudence applicable leads us to a conclusion contrary to that maintained by the Attorney General.

We think it well to transcribe the summing up of the jurisprudence by Cyc. as follows:

"Actions, in the nature of trespass or trespass on the case, against public officers for acts of omission or commission in the conduct of an office, were transitory at common law; but by statute many of such actions were localized. Similar legislation followed in America at an early day, but not in all states. In 1848 the principle of this act of 21 Jac. I, c. 12, was definitely adopted by the framers of the first American Code of Procedure. This enactment, in substantially these terms, and for the most part in their very letter, has become a standard form in the American statutes of venue; but in a considerable number of states its terms have been extended to embrace suits for failure to act as well as for acts done and suits on official bonds.

"The provision assumes that the action is brought against defendant as an officer; it has no application when the ground of the action is that defendant was not an officer when the act charged was done.

"By its terms and policy the provision relates to public officers.

"The statute of 21 Jac. I, c. 12, related in terms to acts 'done' by an officer but was silent as to acts of omission. Following this lead, some of the courts have held that the provision applies to an affirmative act, but not a mere omission or neglect of official duty. In this construction the enactment reaches only such affirmative acts of an officer as directly interfere with the personal rights or property of the person complaining, such as a wrongful arrest, a trespass, or a conversion. The later form of the statute in some states, and the resulting decisions, extend the rule to actions for an alleged omission to perform an official duty.

"To come within the scope of the provision defendant's act must have been under color of his office, or his omission must have been of a duty incident to his office. That his office did not strictly justify him in the particular acts done will not prevent the operation

of the statute, 'for if he in reality acted in the course of his office, he would want no protection.' But when the act, although done by one who is an officer, has no relation to the execution of his office, the venue is determined by the general rule." 40 Cyc. 87–90.

The only case cited by the Attorney General in support of his contention in his brief of May 8 is that of *Lee* v. *State,* 49 Ala. 43. Transcribing what was held in that case will suffice, without discussion, to justify the conclusion that it does not apply. It was as follows:

"The City Court of Eufaula has jurisdiction, in civil cases, where the defendant resides in said County of Barbour east of range twenty-seven; and concurrent jurisdiction with the Circuit Court of said county of all offences against the criminal laws of the State committed in said county. See sixth section of the act approved February 14, 1870, entitled, 'An Act to establish the City Court of Eufaula.' Session Acts of 1869–70, page 105. It may be admitted that a proceeding in the nature of a *quo warranto,* especially when, as here, it is instituted on the relation of an individual, and its object is to determine whether the relator or the defendant is entitled to the office which it is alleged that the defendant usurps, &c., is to be regarded rather as a civil than as a criminal proceeding. If, however, the defendant appears in the court, and claims to be an officer of the court, and to exercise the duties of said office in the court, and to enjoy the privileges, and to take and receive the fees and emoluments of said office; if the court has jurisdiction of such proceedings, and on a proper relation being filed in the premises, charging him with usurping said office, and with a violation of the law in exercising the duties thereof; may not said court, by its process, require him to answer to said proceeding, and to show by what warrant and authority he claims to hold said office, and to exercise the duties thereof in said court? And can such defendant successfully plead to the jurisdiction of the court that he resides in said county, but not within that portion of it over which the civil jurisdiction of said court extends? These questions present a novel case, and one, perhaps, not free from doubt; but looking at it on principle, and the reason of the thing, we are of the opinion he cannot. Every court of general jurisdiction (and such is the City Court of Eufaula), within certain limits, must necessarily have jurisdiction over its own officers; and this we see, by the sixth section of the act establishing it, is expressly conferred on said City

Court. Besides, by appearing in said court, and claiming to exercise an office pertaining to said court, and necessary to the business of said court, he must be held to be subject to its jurisdiction, and bound to answer to its process, in such a case as this; and he may be required to answer and show by what warrant and authority he claims to hold said office, and to exercise and perform its duties, and to take its emoluments.''

By virtue of all of the foregoing we are of the opinion that the writ of certiorari issued should be discharged and the *quo warranto* case remanded to the district court wherein it originated.

*Writ discharged.*

Justices Aldrey and Franco Soto concurred.
Mr. Justice Wolf concurred in the judgment.
Mr. Justice Hutchison dissented.