UNITED STATES of America, Plaintiff,

v.

The EXECUTIVE COMMITTEE OF the DEMOCRATIC PARTY OF DALLAS COUNTY, ALABAMA, and Marshall Alston Keith, Chairman of the Executive Committee of the Democratic Party of Dallas County, Alabama, Defendants.

Civ. A. No. 4072-66.

United States District Court
S. D. Alabama, N. D.
May 24, 1966.

John Doar, Asst. Atty. Gen., Washington, D. C., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., for plaintiff.

Frank Mizell, Jr., Montgomery, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, Chief Judge.

## FINDINGS OF FACT

(1) On May 3, 1966, the Democratic Party primary election for federal, state and local offices was held in Dallas County, Alabama.

(2) There were 80 voting boxes in Dallas County, in accordance with the statutory requirement of one box for every 300 voters. This is more than twice as many boxes as were required in the 1964 elections in Dallas County.

(3) Pursuant to statute, there were appointed for every voting box three inspectors, two clerks, and a returning officer. The increase in the number of ballot boxes necessitated the use of many new and inexperienced polling officials. Only one instruction class was held for the instruction of poll officials, and not all of the appointed officials received notice or attended the class.

(4) During election day and after the polls had closed, some of these inexperienced officials encountered difficulties in the performance of their duties as polling officials. During the early morning of May 4, Judge Bernard Reynolds, Probate Judge of Dallas County, Alabama, and also a member of the Democratic Executive Committee, received a report that unless help was sent to relieve poll officials, several boxes would not come in until late in the morning of May 4. In the early morning of May 4, Judge Reynolds and Acting Sheriff Lawrence, both of whom are members of the Dallas County Appointing Board, obtained volunteers to help count ballots at some of the boxes at which the count had not been completed. The volunteer workers obtained by Judge Reynolds relieved election officials at Boxes 19, 34, and 35, and completed the initial count of the ballots. Neither they nor the election officials resolved all tally discrepancies or filled out certificates of results for their boxes before the boxes were returned to the courthouse.

(5) On May 4, 1966, when all the boxes were brought to the Dallas County Court House for canvassing by the Democratic Executive Committee, some of these boxes did not appear to comply with all the technical statutory requirements of Alabama law concerning the tabulation of the ballots in the boxes. There were no certificates of results prepared by the election officials or relief election officials and placed in the boxes nor attached to the outside of the boxes.

(6) While the Democratic Executive Committee was in the process of tabulation of the vote and before a result had

been officially declared, James G. Clark, Jr., a candidate for Sheriff of Dallas County, contested the inclusion of six boxes, claiming that they did not comply with technical statutory requirements.

(7) The Executive Committee met on May 5, 1966, to act on the challenge filed by Clark.

(8) The challenged boxes were Boxes 19, 34, 35, 42, 43, and 45. And the Committee voted to exclude these six boxes. Nevertheless, pursuant to the order of the Committee, each of said six boxes was then recounted by three persons selected by the defendant Committee, and each such count was conducted in the presence of two federal observers. The votes for all races were counted.

(9) At Box 19, there were 269 eligible voters, and 242 citizens signed the poll list. There were 241 ballots in the box. Mr. Earl Godwin, who recounted the box, recommended that Box 19 not be included, and the Committee so acted.

(10) At Box 34, there were 341 eligible voters. In the ballot box there were 276 ballots, and there were 276 names on the poll lists. The poll lists appeared to have 277 names but later study revealed that this was attributable to a defect in numbering. Mr. Tom Strong, who recounted the box, recommended that Box 34 be included, but the Committee voted not to include the box.

(11) At Box 35, there were 341 eligible voters. One poll list contains the names of 282 voters. There were 282 ballots cast. The other poll list was not kept properly at the beginning of election day, but was corrected so as to conform to the other poll list after about one-third of the votes had been cast. Mr. Douglas Reynolds, who recounted Box 35, recommended that the box be accepted, but the Committee voted to refuse the box.

(12) At Box 42, there were 287 eligible voters. The names of 244 citizens appear on the poll lists while 246 ballots were in the box. Mr. Robert Hadley, who recounted Box 42, recommended that the box be accepted, but the Committee refused to accept the box.

(13) At Box 43, there were 308 eligible voters. There were 267 ballots in the ballot box and there were 267 names on the poll list. Mr. Henry King, who recounted Box 43, recommended that the Committee reject that box, and the Committee so acted.

(14) At Box 45, there were 306 eligible voters. The names of 264 persons appear on the poll lists and there were 263 ballots in the ballot box. Mr. Jesse Pearson, who recounted Box 45, recommended that the box be rejected and the Committee rejected the box.

(15) On May 5, 1966, the Executive Committee announced the result of the election on the basis of 74 of the 80 boxes in which votes had been cast. The vast majority of the voters in the 6 rejected boxes were people who had been registered pursuant to the Voting Rights Act of 1965.

(16) The Court listened to testimony concerning alleged defects in the six boxes for almost two days. The Court did not hear at that time any evidence which would indicate that votes were bought or sold, that boxes were stuffed, or that there was any misconduct on the part of polling officials or voters which could be construed as even approaching fraud. The only irregularities which were proved to the Court were failures to comply with technical procedures of Alabama law governing elections. It must be borne in mind that the entire six boxes contained some sixteen-hundred-odd ballots. The counting of the ballots in Dallas County in this election was manual and not by machine. Such discrepancies as occurred between the poll lists and the ballots actually in the boxes seem rather minute considering the ground for human error involved, particularly among election officials who were inadequately instructed in their duties through no fault of their own. Since these shortcomings were of a clerical nature and attributable to the inexperience and inadequate training of these of-

ficials, the irregularities were not of such nature as to justify the wholesale rejection of any of the six boxes or any of the legal ballots contained therein.

(17) As to the charge that Box 42 was left unattended, the Court finds that at no time was Box 42 left without surveillance and that its contents were not the object of tampering, as the evidence showed that election officials were present in the polling place at all times and could see said box.

(18) On May 5, 1966, the United States instituted suit in this court pursuant to the Voting Rights Act of 1965, and seeks the inclusion of the 6 challenged boxes in the announcement of the official result of the election in Dallas County, Alabama.

## CONCLUSIONS OF LAW

This Court acquires jurisdiction pursuant to Sec. 12(f) of the Voting Rights Act of 1965 wherein the district courts of the United States are given jurisdiction over proceedings instituted under Sec. 12. Under Sec. 12(d), injunctive relief is permitted in order to secure compliance with certain sections of the Voting Rights Act of 1965, namely Sec. 11(a). That section provides:

"No person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of this Act or is otherwise qualified to vote, or wilfully fail or refuse to tabulate, count, and report such person's vote."

The constitutionality of these provisions has been attacked by the defendants on oral motion. It is true that the United States Supreme Court expressly excluded Secs. 11 and 12 from the scope of their judicial review in State of South Carolina v. Katzenbach, 383 U.S. 301, 317, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). In that case, it was reiterated that states "have broad powers to determine the conditions under which the right of suffrage may be exercised." Carrington v. Rash, 380 U.S. 89, at 91, 85 S.Ct. 775, at 777, 13 L.Ed.2d 675 (1964). However, the Fifteenth Amendment of the U. S. Constitution forbids abridgment by a state of the right to vote on account of race. Citing Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), the Court stated that the exercise of state powers in the domain of state interest are subject to federal judicial review when the state power is so exercised as to circumvent a federally protected right. See State of South Carolina v. Katzenbach, supra, 383 U.S. at 325, 86 S.Ct. at 817. Citing Section 2 of the Fifteenth Amendment which authorizes Congress to enact "appropriate legislation" to enforce the federally protected rights in the amendment, the Court then sustained the use of federal legislation as a vehicle for enforcement of the Fifteenth Amendment. State of South Carolina v. Katzenbach, supra, 383 U.S. at 326, 86 S.Ct. at 817.

The U. S. Supreme Court has therefore sanctioned the use of federal legislation, as well as judicial intervention, as a method of enforcement of the Amendment. The means of such enforcement appear to be governed by traditional concepts relative to the exercise of Congressional power as enumerated in M'Culloch v. Maryland, 4 Wheat. (17 U.S.) 316, 321, 4 L.Ed. 579 (1819). In essence, if the means be appropriate and plainly adapted to the end, they are constitutional.

Being bound by these decisions, the only issue that can be considered in defendants' challenge of the Voting Rights Act's constitutionality is whether or not the prohibited act and the means of enforcing that prohibition are appropriate and plainly adapted to the end of prevention of the abridgment of the right to vote as protected by the Fifteenth Amendment. The ban against refusal to tabulate the votes of those registered under this Act and the grant of jurisdiction to issue injunctive relief to forbid such refusal appear to be a rational means to effectuate the Fifteenth Amendment prohibition of racial voting discrimination. This court therefore finds that Sections 11(a) and 12(d) of the Voting Rights Act of 1965 are con-

stitutional in light of implications inherent in the recent ruling of the U. S. Supreme Court in State of South Carolina v. Katzenbach, supra.

Plaintiff's Exhibit No. 12, the minutes of the May 5, 1966, meeting of the Executive Committee, base the Committee's refusal to tabulate the vote in the six boxes on the non-compliance with certain technical statutory requirements under Alabama's voting procedures. These provisions governing primary elections are found in Title 17, §§ 336–412, Code of Alabama (1940) (Recomp.1958) and, on their face, appear to be legitimate exercises of the state's right to lay down rules for the protection of the public in the conduct of an election. Although Sec. 12(f) of the Voting Rights Act of 1965 gives this court jurisdiction regardless of whether state remedies have been exhausted, this court takes the position that the procedural regulations for Alabama elections found in the Alabama Code can and will be enforced with due protection for all the citizens of Dallas County, white as well as negro. The object of judicial intervention of this nature is to insure, as far as possible, the effective administration of the Alabama election statutes without abridgment of the right of any citizen to vote and *have the vote counted.*

Turning to the applicable state law, Title 17, Sec. 363, Code of Alabama (1940) (Recomp.1958) outlines the procedure to be used at the polls when the polls have closed and it is time to count the vote. In essence, the polling officials are to compute the results on tally sheets and draw up a certificate of result. The certificate of result and one tally sheet are to be placed in an envelope addressed to the Democratic Executive Committee and delivered outside the box to the Committee by noon of the day following the election. If no difficulties are encountered by the election officials, the Executive Committee simply reads the results as found in the envelope at its meeting for the purpose of computing the result pursuant to Title 17, Sec. 366, Code of Ala. (1940) (Recomp.1958).

However, the following language in Sec. 363 gives the procedure when the certificate of result is not in its proper form:

" * * * where a box has been returned but no certificate of result of the election has been sent the chairman outside of the box, the box may be opened by the chairman of the county committee, under the direction and in the presence of the committee; and the committee for canvassing purposes may obtain the result * * * from the contents of the box, using the certificate of result contained therein, if any, *or otherwise,* so far as necessary in order to obtain it [the result] from the box * * *." Emphasis & bracketed material supplied.

When the Committee tabulates pursuant to the statute cited above, it exercises a function of counting similar to that which should have been exercised at the polls had not difficulties been encountered, and the result thereby achieved is just as legal and binding as one obtained by tabulation at the polling place. Title 17, Sec. 362 provides that the votes must be counted in the manner prescribed by law for general elections. Title 17, Sec. 193, states the precedures for the counting of votes and the following language is especially relevant to the case at bar:

" * * * nor shall any ballot be rejected for any technical error which does not make it impossible to determine the elector's choice * * *."

Therefore, in enforcement of the Alabama law, the Executive Committee shall conduct an official count of the votes in the rejected boxes. Indeed, members of the Committee have already conducted unofficial tabulations of the vote in these boxes with little apparent difficulty and inclusion of some of the boxes was urged by some members of the committee. It is true that the Fifteenth Amendment protects the right to vote from the effects of racial discrimination but, with all due respect to the U. S. Constitution, this court need not look any further than the Alabama Supreme Court for the

words that shall set the standard for the tabulation of the vote in the six boxes:

"To declare said election invalid on account of the ignorant, but no doubt honest mistakes and irregularities of the inspectors, or of those who acted as such, would be to visit their mistakes upon those who were not in any wise the cause of or responsible for them, and would also be in violation of sound public policy * * * To adopt technical and stringent rules in the construction of our election laws will be, in most cases, to defeat the very objects and purposes of said laws, and to disregard the honestly and fairly expressed will and desire of the people, which it is manifestly the purpose and intention of said laws to secure and carry into effect." Lee v. State ex rel. Locke, 49 Ala. 43, 56 (1873).

■■■■ Pursuant to the spirit and intent of both Alabama and Federal law, and specifically Title 17, Sec. 363, the Executive Committee is ordered to count the votes in all six boxes. The function of the Executive Committee at this stage is purely ministerial (Pope v. Howle, 227 Ala. 154, 156, 149 So. 222, 223 (1933)) and this is not the appropriate forum to challenge the inclusion of any ballot or box, unless said ballot does not appear genuine and regular on its face. (Hudmon v. Slaughter, 70 Ala. 546 (1881)). Further, the Committee cannot exclude a box on the basis of the bare allegation that it was unattended, especially when the evidence contradicts that contention.

Finally, the defendant, in his post-trial memorandum, contends that this cause is moot and that the court is being asked to do a useless thing. Although a contest of the Committee's result as announced on May 5, 1966, has been filed, this court cannot presume that the contest will be successful and that any different announcement of the result will be made following the contest. Any contest which has already been filed will have to be refiled to the announcement of result that shall be made by the Committee pursuant to the order of this court in this cause.

The Executive Committee of the Democratic Party, upon their compliance with the following order will thereby be in a position to accord simultaneous respect for the election laws of Alabama and the rights of the voters whose ballots now await tabulation in the six challenged boxes.

## DECREE

Defendants are hereby restrained and enjoined from failing and refusing to tabulate the votes in the six boxes and such tabulation shall be conducted in strict accordance with the findings of fact and conclusions of law entered herein.

Section 12(d) of the Voting Rights Act of 1965 designates this form of relief as "preventive", and in that regard the injunction herein issued seeks to prevent the violation of Title 17, Section 363, Code of Alabama. Upon such tabulation, the Democratic Executive Committee is ordered to re-declare and re-certify the results of the May 3, 1966 primary election, based upon all the eighty boxes in Dallas County, Alabama. There shall be no rejection of any ballot in this tabulation on any ground other than that the ballot does not reflect the intention of a qualified voter.

This Court retains jurisdiction of this action.

The United States Marshal is hereby directed to return plaintiff's exhibits Nos. 13 through 18, the six contested boxes, to the Honorable Bernard A. Reynolds, Probate Judge of Dallas County, Alabama, at the Dallas County Courthouse, Selma, Alabama.